[No. F030085. Fifth Dist. June 4, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
DERRICK JEROME KELLY, Defendant and Appellant.

**COUNSEL**

Bradley A. Bristow, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Carlos A. Martinez and Charles A. French, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### STONE (W. A.), Acting P. J.—

#### BACKGROUND OF THE ACTION

On May 22, 1997, pursuant to a negotiated plea, appellant, Derrick Jerome Kelly, pled guilty to one count of residential robbery. (Pen. Code, § 212.5.)[1] He also admitted personal use of a handgun (§ 12022, subd. (b)) and three prior prison terms. (§ 667.5, subd. (b).) In exchange, the court dismissed two additional counts and imposed a term of ten years: the midterm of six years for the robbery, one year for the personal use enhancement, and three years for the prior prison terms. It also granted appellant 178 days of presentence credit.

On September 16, 1997, upon receipt of a letter from the California Department of Corrections (CDC), the court corrected its assessment of appellant's credits, granting him 136 days of presentence credit.

Thereafter, the CDC sent another letter, this time informing the court the middle term for a section 212.5 violation is four years; the upper term is six years. On December 16, 1997, after determining aggravating factors existed to justify the upper term, the court modified appellant's sentence to reflect the imposition of the upper term of six years for robbery. All other aspects of the sentence stayed the same.

#### DISCUSSION

■ Appellant contends his sentence should be reduced to eight years: the midterm of four years for robbery plus four years of enhancements. It is his position that the court acted beyond its jurisdiction when it determined after the initial sentencing that aggravating factors existed to justify imposition of the upper term.

We find *People* v. *Savala* (1983) 147 Cal.App.3d 63 [195 Cal.Rptr. 193] (*Savala*) controlling. There, the trial court sentenced Savala to 12 years 8 months in state prison. The appellate court remanded for resentencing after determining the trial court had improperly applied a personal use enhancement when calculating his sentence. On remand, the trial court maintained Savala's sentence of twelve years, eight months by staying the one-year enhancement and increasing the principal term from the midterm of four years to the upper term of five years. The appellate court affirmed. "[W]e

---

[1]All further statutory references are to the Penal Code.

hold that defendant was not sentenced to a series of separate independent prison terms but was sentenced to an overall aggregate term. In making its sentencing choices in the first instance the trial court undoubtedly considered the overall prison term to be imposed and was influenced in its choices by the length of the enhancements. When defendant successfully urged the illegality of his sentence on appeal the illegality did not relate only to a portion of the sentence but infected the whole. On remand the trial court was entitled to reconsider its entire sentencing scheme and neither double jeopardy nor due process principles precluded the sentence imposed upon resentencing." (*Id.* at p. 70.) Thus, the court held the trial court could revise Savala's sentence in a way that amended its previous errors while maintaining the original length of the sentence. "In sentencing defendant in the first instance the trial court made an error which affected the entire sentencing scheme devised. When we ordered the court to set aside the first judgment and to resentence defendant the court was entitled to reconsider all of its sentencing choices, subject only to the limitation that defendant not be sentenced to a greater aggregate term than the first sentence. . . ." (*Id.* at p. 69.)

Turning back to the facts before us, we note the record indicates the negotiated plea included a sentence of six years for the robbery count if appellant pled guilty. Although the court and the parties mistakenly thought six years constituted the middle term, necessitating revision by the court to maintain that length of time, appellant did ultimately get the benefit of his bargain. That those six years represent the upper rather than middle term in section 212.5 is not fatal, particularly since aggravating factors do exist to justify an upper term.

Appellant relies on *People* v. *Drake* (1981) 123 Cal.App.3d 59 [176 Cal.Rptr. 186] (*Drake*) to support his position that the court was obligated to amend the sentence so he received four years, the correct length for the middle term. There, the trial court imposed the midterm of three years, plus seven years on other counts, for a total of ten years. After determining the sentence was unauthorized because it was longer than double the base term (former § 1170.1, subd. (f)),[2] the trial court raised the midterm to the upper term and stayed some of the remaining counts to arrive at the same total of 10 years. The *Drake* court modified the judgment, holding any portion of the sentence in excess of double the base term, six years, was void, that the imposition of the midterm had been a proper exercise of the court's discretion, and that the trial court improperly enhanced defendant's sentence when it changed his sentence from the midterm to the upper term.

Citing *Drake*, appellant contends the trial court in his case should have taken the illegal portion of his sentence, the midterm of six years for

---

[2]That requirement has since been removed from section 1170.1.

robbery, and corrected it to insert the proper number of years for the midterm. We are not persuaded. First, the trial court in *Drake* initially imposed the midterm after determining the upper term was " 'unnecessary . . . under the circumstances.' " (*Drake, supra,* 123 Cal.App.3d at p. 63.) It later revised the sentence to impose the upper term, thereby contradicting its earlier assessment of the case, in order to retain the original length of the sentence. That does not describe the events here. While the trial court made no comments regarding mitigating or aggravating factors, it did grant the People's motion to amend the information to add a second victim to the first count, thus impliedly noting the increased impact of appellant's offense. Furthermore, after noting the sentencing terms of the negotiated plea, the court consulted with both counsel to determine whether they considered the disposition a fair and appropriate consequence to appellant's conduct. Thus, we are not here confronted with a situation like *Drake,* in which the court sentences the defendant to the midterm after expressly finding the upper term inappropriate, only to later sentence the defendant to the upper term in order to keep the aggregate sentence the same length.

More importantly, *Drake* has been routinely criticized for its characterization of determinate sentences as discrete and severable components capable of being separated out and corrected. "To the contrary, the components of an aggregate term are properly viewed as interdependent when calculating and imposing sentence, and an aggregate term of imprisonment under the determinate sentencing law constitutes a total prison term which is 'a single term rather than a series of separate terms.' [Citations.]" (*People* v. *Stevens* (1988) 205 Cal.App.3d 1452, 1456 [253 Cal.Rptr. 173] (*Stevens*); *People* v. *Calderon* (1993) 20 Cal.App.4th 82, 88 [26 Cal.Rptr.2d 31]; *People* v. *Hill* (1986) 185 Cal.App.3d 831, 835, fn. 6 [230 Cal.Rptr. 109]; *People* v. *Burns* (1984) 158 Cal.App.3d 1178, 1183, fn. 6 [205 Cal.Rptr. 356].) In *Stevens,* the court expressly declined to follow *Drake,* embracing instead the reasoning in *Savala* that a determinate sentence is a single continuous term of confinement to be reviewed in its entirety, if error occurs. It further noted: "The approach in *Drake* also appears to have been premised on an assumption, explicitly articulated in *People* v. *Swanson* (1983) 140 Cal.App.3d 571 . . . , that 'a sentencing judge is required to base his decision on the statutory and rule criteria, on an analysis of legitimate aggravating and mitigating factors, and *not* on his subjective feeling about whether the sentence thus arrived at seems too long, too short, or just right. He is not permitted to reason backward to justify a particular length sentence which he arbitrarily determines.' (*Id.* at p. 574, italics in original.) However, the mechanics of sentencing are not necessarily as rigid as portrayed in *Swanson.* A judge's subjective determination of the value of a case and the appropriate aggregate sentence, based on the judge's experience with prior

cases and the record in the defendant's case, cannot be ignored. *A judge's subjective belief regarding the length of the sentence to be imposed is not improper so long as it is channeled by the guided discretion outlined in the myriad of statutory sentencing criteria.* [Citations.]" (*Stevens, supra,* 205 Cal.App.3d at p. 1457, italics added.) We think the italicized language correctly characterizes the trial court's role when fixing a defendant's sentence. While it must follow the pertinent statutory guidelines, the court may keep in mind the length of a sentence it thinks appropriate for a defendant and rule accordingly. To the extent *People* v. *Swanson* (1983) 140 Cal.App.3d 571 [189 Cal.Rptr. 547], holds otherwise, we disagree. We believe the reasoning of *Savala* is more persuasive.

Applying the principles in *Stevens* and *Savala* here, we conclude the trial court properly reviewed the sentence in its entirety after discovering a portion of it was illegally imposed. To impose a sentence with the same number of years previously agreed upon in a negotiated plea, a sentence the court obviously considered fair, the court retained the original amount of six years and relabeled it with its correct characterization as an upper term. It noted aggravating factors existed to support this result. "From the nature of the offense, from [appellant's] prior convictions, the ten year sentence certainly is not inappropriate. It would appear to be an appropriate sentence. . . . [T]he nature of the offense and [appellant's] prior convictions certainly would justify an aggravated term on a simple home invasion robbery . . . . So the court will correct the sentence to be an aggravated term of six years. The total sentence of ten years stands . . . ." We cannot agree this result is erroneous. "[A]ppellant's attempt to reduce her aggregate prison term inappropriately treats sentencing as a technical game in which a wrong move by the judge would necessitate a defendant's premature release into society. [Citation.] 'Just as the law has no interest in punishing defendants more severely than has been ordained by the Legislature, the law also has a strong interest in seeing to it that defendants do not unfairly manipulate the system to obtain punishment far less than that called for . . . .' [Citation.]" (*Stevens, supra,* 205 Cal.App.3d at p. 1458.)[3] We cannot condone a result in which appellant is permitted to manipulate a technical error into early release when the record clearly indicates everyone intended him to serve six years for the robbery and aggravating factors exist to support imposition of the upper term.

---

[3]Appellant also argues double jeopardy principles were violated when the trial court resentenced him to the upper term of section 212.5. Aside from his failure to properly develop the argument, which alone is fatal on appeal (*People* v. *Callegri* (1984) 154 Cal.App.3d 856, 865 [202 Cal.Rptr. 109], disapproved on other grounds in *People* v. *Bouzas* (1991) 53 Cal.3d 467, 477-480 [279 Cal.Rptr. 847, 807 P.2d 1076]), we note the argument has been previously considered and rejected. (*Savala, supra,* 147 Cal.App.3d at p. 69.)

*Sentencing Credits*

Appellant argues the trial court improperly delegated the duty of calculating his presentence credits to the CDC. A close reading of the transcript, however, indicates appellant has misinterpreted the court's directive.

The record indicates appellant's presentence credits were originally calculated on May 22, 1997. The court granted him 178 days' presentence credit, 119 actual and 59 good/work time. The CDC subsequently informed the court the credits should have totaled 136: 119 actual and 17 good/work time. The court conducted a hearing on September 16, 1997, to clarify the judgment, granting appellant the credits as amended by the CDC.

When the trial court later learned from the CDC that it had incorrectly characterized appellant's six-year sentence for robbery as the middle term, it conducted a third hearing, on December 19, to revise that term. At the conclusion of the hearing, it stated "[c]redits as calculated by the Department of Corrections." Appellant construes this to mean the court improperly instructed the CDC to calculate his credits, a duty that rests with the court. (§ 2900.5.) We disagree. The language the court used suggests it meant the calculation of appellant's credits would remain as previously determined. We note the court did not say "credits *to be* calculated by the CDC." Our interpretation is supported by the fact that the modification of appellant's sentence at the December hearing in no way changed the number of credits appellant would receive. Thus, even if the court did erroneously direct the CDC to recompute appellant's credits, the error is harmless since no changes are needed.

## DISPOSITION

The judgment is affirmed.

Wiseman, J., and Levy, J., concurred.

A petition for a rehearing was denied June 21, 1999, and appellant's petition for review by the Supreme Court was denied September 22, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.