Filed 9/4/24

**<u>CERTIFIED FOR PUBLICATION</u>**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| In re | F087367 |
|---|---|
| ELIEL ELPIDIO BROWN, | (Kings Super. Ct. No. 23W-0033A) |
| On Habeas Corpus. | **OPINION** |

ORIGINAL PROCEEDINGS; application for writ of habeas corpus. Randy Edwards, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Petitioner Eliel Elpidio Brown.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, Maria G. Chan and Yun Hwa Harper, Deputy Attorneys General, for Respondent the People.

-ooOoo-

# INTRODUCTION

In 2017, the Legislature codified the Elderly Parole Program, which became effective January 1, 2018. (Pen. Code, § 3055, subd. (a),[1] added by Stats. 2017, ch. 676, § 3.) This program is administered by the parole board for purposes of reviewing the parole suitability of elderly prisoners. Section 3055 excludes certain prisoners from parole, including those who were sentenced pursuant to the "Three Strikes" law.[2] (§ 3055, subd. (g).)

An important issue before us is the timing of the Three Strikes exclusion under section 3055, subdivision (g). Petitioner Eliel Elpidio Brown contends that this exclusion only applies if a defendant is sentenced pursuant to the Three Strikes law to commence prison custody. In petitioner's case, he was not originally sentenced under the Three Strikes law but, while in prison, he was convicted of a new crime and sentenced pursuant to the Three Strikes law. According to petitioner, he was still eligible for early parole release.

After he filed the present petition for writ of habeas corpus, petitioner was released from prison. Petitioner's release renders moot at least some of the issues which he had raised. At oral argument in this matter, respondent asserted that the entire petition was now moot and it should be dismissed on those grounds.

We decline to dismiss the petition as moot. Although petitioner is no longer in prison, we will nevertheless exercise our discretion to resolve the merits of the petition. The legal questions presented are likely to recur, they might otherwise evade appellate

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

[2] The Three Strikes law is codified in section 667, subdivisions (b) through (i), and section 1170.12. (*People v. Dain* (2024) 99 Cal.App.5th 399, 409.) "Prior convictions for 'serious' or 'violent' felonies, as defined by the Three Strikes law, are referred to as 'strikes.' " (*People v. Dain*, *supra*, at p. 409, citing *People v. Henderson* (2022) 14 Cal.5th 34, 43–44.)

2.

review, and they are of continuing public interest. (*People v. Morales* (2016) 63 Cal.4th 399, 409.)

We reject petitioner's arguments. We hold that the Three Strikes exclusion under section 3055, subdivision (g), applies to prisoners, like petitioner, who were convicted and sentenced under the Three Strikes law even if they had already commenced serving a prison sentence. We deny the present petition for writ of habeas corpus.

## BACKGROUND

In 2000, petitioner was convicted of second degree murder. He was sentenced to prison for 15 years to life, plus a consecutive four years for a firearm enhancement. He began serving his sentence with the California Department of Corrections and Rehabilitation (CDCR).

In 2008, petitioner was convicted of a new felony, aggravated assault by a prisoner likely to produce great bodily injury (former § 4501). Via a plea, he received a four-year determinate sentence which was imposed fully consecutive to his then pending indeterminate sentence. The four years was based on the low term of two years, doubled because of his prior strike conviction. (See former § 4501.) The 2008 sentencing court issued an abstract of judgment that listed both petitioner's pending indeterminate sentence and his fully consecutive determinate sentence. The 2008 abstract shows that petitioner's sentence was imposed under section 667, subdivisions (b) through (i), which is part of the Three Strikes law.

By statute, petitioner was required to complete his indeterminate sentence before he could start serving his fully consecutive determinate sentence. (§ 1170.1, subd. (c).) Almost four decades ago, a panel from this court held that a prisoner's indeterminate life sentence may not be interrupted or tolled for a subsequently imposed determinate term for crimes committed in prison while serving the life term. (*In re Thompson* (1985) 172 Cal.App.3d 256, 258 (*Thompson*).) A sentence under section 1170.1, subdivision (c), imposed for a crime that occurred in prison—such as petitioner's fully consecutive

3.

determinate term—is known as a *Thompson* term. (See *In re Hoze* (2021) 61 Cal.App.5th 309, 313 (*Hoze*).) Section 1170.1, subdivision (c), ensures that prisoners who commit crimes in prison are punished more severely. (*People v. Landry* (2016) 2 Cal.5th 52, 105; see also *In re Coleman* (2015) 236 Cal.App.4th 1013, 1022 ["Commencing the consecutive sentence for the custodial offense on the date the prisoner otherwise actually would have been released on parole is consistent with the Legislature's intent to punish and deter criminality in prison."].)

In September 2022, petitioner went before the parole board for parole consideration. The presiding commissioner indicated that petitioner was being considered for parole because petitioner was over 58 years old and he had served at least 20 years. According to the commissioner, petitioner qualified for elderly parole consideration, and the board would give special consideration to the elderly parole factors when deciding his suitability for parole. This was the second time petitioner had appeared before the board for parole consideration.

In conducting its review, the board noted that petitioner had incurred an assault conviction while in custody. The board did not address whether the Three Strikes exclusion might apply. The board concluded that petitioner no longer posed an unreasonable risk of danger or threat to the public, and petitioner was suitable for parole. In part, the board noted petitioner's "advancing age," his lengthy confinement, and his "chronic medical conditions" which were "apparent" to those attending the hearings. It was noted that petitioner had slurred speech from prior seizures. Petitioner was alerted that the parole board would review its decision for up to 120 days, and the Governor would then review that decision for up to 30 days.[3]

---

[3]     See section 3041, subdivision (b)(2), which sets forth the 120-day review period. See section 3041.2, subdivision (a), which sets forth the 30-day review period.

4.

On February 2, 2023, CDCR notified petitioner that he would begin serving his four-year determinate sentence that was imposed in 2008. CDCR calculated that petitioner's remaining term commenced on January 27, 2023.

On February 23, 2023, petitioner filed a petition for writ of habeas corpus in the Kings County Superior Court. In July 2023, the lower court issued an order to show cause. An attorney was appointed to represent petitioner.

Petitioner argued below that CDCR was improperly holding him in custody and he was entitled to immediate release. According to petitioner, because he was paroled under section 3055, he was no longer required to serve his determinate sentence from 2008. To support his claim, petitioner relied on *Hoze*, *supra*, 61 Cal.App.5th 309. In general, *Hoze* holds that a grant of parole to an elderly prisoner under section 3055 terminates any additional consecutive prison terms (i.e., *Thompson* terms) that would otherwise have to be served under section 1170.1, subdivision (c). (*Hoze*, *supra*, at p. 319.)

In October 2023, the superior court denied petitioner's petition for writ of habeas corpus. According to the court, petitioner was statutorily ineligible for parole under section 3055 because petitioner had been sentenced pursuant to the Three Strikes law.

In December 2023, petitioner filed in this court the present petition for writ of habeas corpus.

In March 2024, we issued an order to show cause, and the parties subsequently filed their respective briefs.

On July 19, 2024, respondent notified this court that petitioner's custody status had changed. According to respondent, CDCR released petitioner on July 10, 2024, and he was transferred into the custody of the United States Immigration and Customs Enforcement (ICE). We were informed that petitioner is in the process of being deported. In light of the changed circumstances, respondent asked us to construe the present petition as moot.

5.

On July 26, 2024, petitioner filed an opposition to respondent's request to dismiss this petition.

On August 1, 2024, this court construed respondent's notice of petitioner's changed custody status as a motion to dismiss, which was denied without prejudice.

On August 21, 2024, oral argument occurred. Respondent confirmed that, as of July 10, 2024, petitioner was no longer in CDCR custody and he had been transferred to the custody of ICE. According to respondent, petitioner is in the process of being deported.

## DISCUSSION

### I. An Overview of Section 3055.

The Elderly Parole Program originated in 2014 as part of a remedy for a violation of the Eighth Amendment of the United States Constitution for the state's failure to provide adequate medical care and mental health care to prison inmates as a result of overcrowding. (*Hoze*, *supra*, 61 Cal.App.5th at p. 313; see *Brown v. Plata* (2011) 563 U.S. 493, 499–500.) "To further reduce the prison population, a federal court ordered the state to implement what became the Elderly Parole Program. In 2018, the Legislature codified the program in section 3055. [Citation.] Its 'main purpose was to curb rising medical costs of the geriatric inmate population and to provide a "compassionate" release for those elderly individuals.' " (*Hoze*, *supra*, at pp. 313–314.)

When originally codified in 2018, the Elderly Parole Program applied to inmates who were at least 60 years of age and who had served a minimum of 25 years of continuous incarceration. (§ 3055, former subd. (a).) Effective January 1, 2021, these requirements were lowered to encompass inmates who were at least 50 years of age and who had served a minimum of 20 years "of continuous incarceration on the inmate's current sentence, serving either a determinate or indeterminate sentence." (§ 3055, subd. (a).)

When considering the release of an elderly inmate, the parole board gives special consideration to "whether age, time served, and diminished physical condition, if any, have reduced the elderly inmate's risk for future violence." (§ 3055, subd. (c).) If the board finds the inmate suitable for parole, it is required to "release the individual on parole as provided in Section 3041." (§ 3055, subd. (e).) Section 3041 directs that "[u]pon a grant of parole, the inmate shall be released subject to all applicable review periods"—referring to the period in which the governor may reverse a grant of parole or request further review. (§ 3041, subd. (a)(4); see §§ 3041.1, 3041.2.)

Section 3055 limits who may qualify for the Elderly Parole Program. Relevant to our discussion, section 3055 states that this section "does not apply to cases in which sentencing occurs pursuant to" the Three Strikes law.[4] (§ 3055, subd. (g).)

## II.    Petitioner's Arguments.

Petitioner asserts that prison officials lacked legal grounds to keep him in custody after he was initially found suitable for parole. He maintains that he qualified for elderly parole under the factors listed in section 3055, and he contends his continued incarceration violated the holding in *Hoze*. Prior to his prison release in 2024, he sought an order from this court granting him immediate release from custody. He also previously sought—and he continues to assert—that he should receive credits to be applied to his period of parole for his time spent in custody.

The present petition raises three specific claims.

First, petitioner argues that the superior court failed to apply the general rules of statutory interpretation. According to petitioner, the lower court only examined the word

---

[4]    In addition to the exclusion for sentences imposed pursuant to the Three Strikes law, section 3055 also excludes an individual sentenced to life in prison without the possibility of parole or death. Further, section 3055 excludes an individual who was convicted of first degree murder involving a peace officer killed while engaged in the performance of their duties. (§ 3055, subds. (g) & (h).)

"sentencing" in subdivision (g) of section 3055, and it failed to harmonize the words under the entire statutory scheme. Petitioner complains that the superior court never examined the legislative history.

Second, petitioner contends that the superior court abused its discretion for failing to remand this case back to the parole board. According to petitioner, the lower court violated the separation of powers doctrine because it decided a legal issue that is properly before the parole board. Before he was released from prison custody in 2024, petitioner asserted that this court should remand this case to the parole board to decide if he is eligible for parole.

Finally, petitioner claims the superior court erred in appointing counsel for him.[5] He contends he never wanted counsel to represent him because, according to petitioner, most attorneys do not understand parole law. Petitioner believes he suffered prejudice. He argues he could have received a more favorable outcome had he been allowed to represent himself.

We turn to the merits of petitioner's arguments.

III.    **Petitioner's Arguments Fail Based on the Plain Language in Section 3055.**

Under the Elderly Parole Program, an inmate is eligible for parole consideration if he or she meets the minimum age and custody requirements. The current minimum custody requirement is 20 years "of continuous incarceration on the inmate's current sentence, serving either a determinate or indeterminate sentence." (§ 3055, subd. (a).)

In relevant part, subdivision (g) of section 3055 states that this section "does not apply to cases in which sentencing occurs pursuant to [the Three Strikes law]."

Petitioner focuses on the words "current sentence" in subdivision (a) of section 3055. He asserts that his indeterminate sentence was his "current sentence" when he

---

[5]    California Rules of Court, rule 4.551(c)(2), directs a superior court to appoint counsel "for any unrepresented petitioner who desires but cannot afford counsel" following the issuance of an order to show cause.

went before the parole board in 2022. He contends that, at that time, he had not yet begun to serve his four-year determinate sentence. He argues that the Three Strikes exclusion appearing in subdivision (g) of section 3055 had no bearing on him because his "current sentence" (i.e., his indeterminate term) was not imposed under the Three Strikes law. Petitioner maintains that, in order for the exclusion in subdivision (g) to apply to an inmate, any Three Strikes sentence must be part of the "original" or "initial" sentence. In other words, petitioner argues that subdivision (g) does not apply for a Three Strikes sentence that occurred "years after the conviction on the 'current offense.' "

According to petitioner, section 3055, subdivision (g), must apply to a prisoner's "current offense" and it does not apply to an "in-prison offense." Petitioner acknowledges that, if his original sentence was imposed under the Three Strikes law, he would have been ineligible for parole under the Elderly Parole Program. However, he contends that neither section 3055 nor the applicable California regulations[6] contemplate a subsequent strike offense that occurred after an inmate's original sentence was imposed.

To address petitioner's arguments, we look first to the language of the statute. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.) Our fundamental task is to ascertain and effectuate legislative intent. We must give effect to the statute's plain meaning. (*Ibid*.) Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Ibid*.) If there is no ambiguity in the statutory language, we presume the Legislature meant what it said, and the statute's plain meaning governs. (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 640.)

In conducting our analysis, we note that the Legislature did not define the word "sentence" in section 3055. The term "sentence" is also not defined in the Penal Code. (*People v. Johnson* (2015) 61 Cal.4th 674, 688.) However, published opinions have

---

[6] See California Code of Regulations, title 15, sections 2449.40 through 2449.43.

9.

consistently held that, although a criminal sentence may comprise multiple terms, it is nevertheless considered a single aggregate sentence. (See *People v. Williams* (2004) 34 Cal.4th 397, 400–401; *People v. Felix* (2000) 22 Cal.4th 651, 655; *People v. Christianson* (2023) 97 Cal.App.5th 300, 315; *People v. Walker* (2021) 67 Cal.App.5th 198, 206; *People v. Rodriguez* (2012) 207 Cal.App.4th 204, 211; *People v. Neely* (2009) 176 Cal.App.4th 787, 798; *People v. Hill* (1986) 185 Cal.App.3d 831, 834.)

"A person sentenced for convictions in multiple cases receives a single sentence." (*In re Bolton* (2019) 40 Cal.App.5th 611, 624.) An aggregate term of imprisonment is a single term and not a series of separate terms. (*People v. Kelly* (1999) 72 Cal.App.4th 842, 846; *People v. Stevens* (1988) 205 Cal.App.3d 1452, 1456.) "A court that decides to run terms *consecutively* must create a new, 'aggregate term of imprisonment' (§ 1170.1, subd. (a)) into which all the consecutive terms merge." (*In re Reeves* (2005) 35 Cal.4th 765, 773.)

We presume the Legislature was aware of the decisional authority that treats a "sentence" as a single term of imprisonment even if it comprises multiple components. When courts have previously construed words or terms, we presume the Legislature intended those words in a statute to have the same precise and technical meaning. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1046; accord, *People v. Lawrence* (2000) 24 Cal.4th 219, 231.)

We reject petitioner's interpretation of the statutory language. Section 3055 does not state or even reasonably suggest that an inmate is eligible for the Elderly Parole Program based on the inmate's *original* or *initial* sentence. Instead, the statute focuses on the inmate's *current* sentence. (§ 3055, subd. (a).) The Merriam-Webster Online Thesaurus states that "current" is synonymous, in relevant part, with "present," "immediate," "ongoing," and "existing." (Merriam-Webster Online Thesaurus <https://www.merriam-webster.com/thesaurus/current> [as of September 4, 2024], archived at: <https://perma.cc/98HV-XPWS>.)

We decline to adopt petitioner's reading of the statute, which impermissibly requires us to alter the plain language to accomplish a purpose that does not appear on its face. (See *Burden v. Snowden*, *supra*, 2 Cal.4th at p. 562.) When petitioner went before the parole board in 2022, his "current sentence" included both his indeterminate term and his fully consecutive determinate term. Since 2008, petitioner's "current sentence" had a term imposed under the Three Strikes law. Based on a plain reading of section 3055, petitioner's arguments are without merit. His "current sentence" rendered him ineligible for parole release pursuant to the Three Strikes exclusion in section 3055. (See § 3055, subds. (a) & (g).) We presume the Legislature meant what it said, and the statute's plain meaning governs. (See *Meyer v. Sprint Spectrum L.P.*, *supra*, 45 Cal.4th at p. 640.)

Finally, we reject petitioner's assertion that the Three Strikes exclusion in subdivision (g) of section 3055 may prohibit an elderly inmate from parole only if he or she has "a pure three-strike offense." Section 3055 does not contain such language. Instead, the Three Strikes exclusion applies to any sentence imposed under either section 667, subdivisions (b) through (i), or section 1170.12. (§ 3055, subd. (g).) Since 2008, petitioner's sentence fell under the exclusion. His arguments are without merit regarding how to interpret the plain statutory language.

## IV.    The Legislative Materials Confirm Our Interpretation of the Statutory Language.

In general, when statutory language is unambiguous, a court is precluded from considering its legislative history. (*Riddick v. City of Malibu* (2024) 99 Cal.App.5th 956, 970.) However, legislative history may be considered to confirm the interpretation already apparent from the plain language, but not to advance an alternative meaning. (*Id.* at p. 971; see *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 755.)

11.

In 2017, the Legislature passed Assembly Bill No. 1448 (2017-2018 Reg. Sess.), which codified the Elderly Parole Program.  In 2020, the Legislature passed Assembly Bill No. 3234 (2019-2020 Reg. Sess.), which amended the Elderly Parole Program.

The materials accompanying these bills emphasize that prisoners who were sentenced under the Three Strikes law are prohibited from being paroled under the Elderly Parole Program.  (See Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1448 (2017-2018 Reg. Sess.) as amended Mar. 28, 2017, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1448 (2017-2018 Reg. Sess.) as amended Sept. 6, 2017, p. 3; Assem. Com. on Public Safety, Assem. Floor Analysis, 3d reading analysis of Assem. Bill No. 1448 (2017-2018 Reg. Sess.) as amended May 30, 2017, pp. 1-2; Assem. Floor Analysis, 3d reading analysis of Assem. Bill No. 3234 (2019-2020 Reg. Sess.) as amended Aug. 3, 2020, p. 3.)

The author of both Assembly Bill No. 1448 (2017-2018 Reg. Sess.) and Assembly Bill No. 3234 (2019-2020 Reg. Sess.) is credited as writing the following for Assembly Bill No. 3234:  "This bill only allows for the opportunity to go to the parole board—it is not automatic release.  *The bill excludes strikers* and estimates from Board of Parole Hearings show that of the total prison population, fewer than 240 individuals would have the opportunity to have a hearing and based on average grant rates, fewer than 50 people would even likely be released."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 3234 (2019-2020 Reg. Sess.) as amended Aug. 24, 2020, p. 2, italics added.)

The legislative materials accompanying Assembly Bill No. 1448 (2017-2018 Reg. Sess.) and Assembly Bill No. 3234 (2019-2020 Reg. Sess.) confirm our interpretation already apparent from the plain language of section 3055.  Those sentenced pursuant to the Three Strikes law are ineligible for early parole release.[7]  (§ 3055, subd. (g).)

---

[7]     The CDCR Web site states that incarcerated persons are eligible for the Elderly Parole Program after reaching age 50 and being continuously incarcerated for 20 years,

12.

Although the legislative materials do not address the timing of the Three Strikes exclusion, the materials amply demonstrate an overwhelming intent to preclude "strikers." Since 2008, petitioner was a second-strike offender. The clear legislative intent was to deny early parole release to petitioner under this program.

## V. *Hoze* **Is Inapplicable.**

In general, when a defendant is sentenced to consecutive determinate and indeterminate terms, the determinate term is served first. (§ 669, subd. (a); *People v. Rodriguez*, *supra*, 207 Cal.App.4th 204, 211.) However, when a defendant is convicted of one or more felonies committed while he is confined in state prison and the trial court imposes consecutive terms, those consecutive terms "shall commence from the time the person would otherwise have been released from prison." (§ 1170.1, subd. (c).) This is known as a *Thompson* term. (*Hoze*, *supra*, 61 Cal.App.5th at p. 313.)

Here, CDCR required petitioner to serve his four-year determinate term stemming from his 2008 conviction. Because of section 1170.1, subdivision (c), petitioner was required to serve this term.

To overcome section 1170.1, subdivision (c), petitioner relies on *Hoze*. *Hoze* holds that a grant of parole to an elderly prisoner under section 3055 terminates any additional prison terms (i.e., *Thompson* terms) that would otherwise have to be served under section 1170.1, subdivision (c). (*Hoze*, *supra*, 61 Cal.App.5th at p. 319.)

The defendant in *Hoze* began serving an indeterminate life sentence in 1980 after he was convicted of numerous felonies, including attempted kidnapping, assault with a deadly weapon, robbery, vehicle theft, and oral copulation. While in prison custody, he

---

except for (1) persons sentenced to death; (2) persons sentenced to life without the possibility of parole; (3) persons sentenced under California's strike laws for a second or third strike; and (4) persons convicted of first degree murder of a peace officer or former peace officer due to performance of their official duties. (Cal. Bd. of Parole Hearings, Elderly Parole Hearings <https://www.cdcr.ca.gov/bph/elderly-parole-hearings-overview> [as of September 4, 2024], archived at: <https://perma.cc/8NHB-PVDD>.)

was twice convicted of possessing a weapon—first in 1981 and again in 1987. (*Hoze*, *supra*, 61 Cal.App.5th at p. 313.) The *Hoze* defendant was sentenced for his crimes committed while in custody. However, those crimes occurred before the initial Three Strikes law became effective March 7, 1994. (See *People v. Alvarez* (1996) 14 Cal.4th 155, 246.)

The parole board granted the *Hoze* defendant parole under the Elderly Parole Program. (*Hoze*, *supra*, 61 Cal.App.5th at p. 313.) At that time, the defendant was 67 years old, and he had served nearly four decades in prison. (*Id.* at p. 312.) The board considered the nature and gravity of his offenses, including the in-prison weapons violations. It concluded that the defendant had shown " 'positive adjustments' " and he no longer posed a risk of danger to society. (*Id.* at p. 313.) However, the defendant was not released from prison because the board concluded that his parole grant did not excuse him from serving his *Thompson* terms. (*Hoze*, *supra*, at p. 313.)

The defendant filed a habeas corpus petition in the superior court, seeking his immediate release. (*Hoze*, *supra*, 61 Cal.App.5th at p. 312.) The lower court granted the petition. On appeal, the *Hoze* court affirmed the superior court's ruling, holding that the Legislature intended to authorize the board to supersede *Thompson* terms when it grants parole to elderly prisoners under section 3055. (*Hoze*, *supra*, at p. 319.)

The *Hoze* court believed that the Elderly Parole Program was modeled on the parole program at section 3051 for youth offenders.[8] (*Hoze*, *supra*, 61 Cal.App.5th at p. 315.) Various courts of appeal have held that section 3051 supersedes the *Thompson*

---

[8] Our review of the legislative materials suggests that the *Hoze* court's belief may not be entirely correct. According to legislative materials accompanying Assembly Bill No. 1448 (2017-2018 Reg. Sess.), California's Elderly Parole Program was not modeled on the California youth offender parole program but, instead, it was based on a Maryland statute already in effect providing elderly inmates with parole opportunity. (See document that starts with "AB 1448 (Weber), Oppose, Assem. Floor: 41-33 (06/01/2017)" summarizing Assem. Bill No. 1448 (2017-2018 Reg. Sess.) version date May 30, 2017, at pp. 7–8; see also Md. Crim. Law Code Ann., § 14-101, subd. (f).)

requirement, and a qualifying youth offender does not have to serve *Thompson* terms once granted parole. (See *In re Trejo* (2017) 10 Cal.App.5th 972, 986; *In re Williams* (2018) 24 Cal.App.5th 794, 804; *In re Jenson* (2018) 24 Cal.App.5th 266, 282–283.)

It is important to note that both section 3051 and section 3055 do not apply to cases in which sentencing occurs pursuant to the Three Strikes law. (§§ 3051, subd. (h), 3055, subd. (g).) However, unlike the Elderly Parole Program, the parole program for youth offenders specifically addresses what happens when a youth offender commits additional crimes. Section 3051 excludes from early parole consideration those youth offenders who "subsequent to attaining 26 years of age" commit "an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison." (§ 3051, subd. (h).)

The *Hoze* court noted that the parole programs for elderly inmates and youth offenders both list specific types of offenses that are excluded from the respective program, but neither specifies section 1170.1, subdivision (c), among the exclusions. (*Hoze*, *supra*, 61 Cal.App.5th at p. 318; see §§ 3051, subd. (h), 3055, subd. (g).) Likewise, "the Legislature excluded from both programs two mandatory sentencing statutes that, like section 1170.1[, subdivision] (c), require the prisoner to begin serving a consecutive term when the prisoner 'would otherwise have been released from prison.' (§§ 1170.12, subd. (c)(2)(B), 667, subd. (e)(2)(B); see §§ 3051, subd. (h), 3055, subd. (g).)" (*Hoze*, *supra*, 61 Cal.App.5th at p. 318.) The *Hoze* court assumed "the Legislature intentionally omitted section 1170.1[, subdivision] (c) from the list of excluded sentencing statutes. [Citations.]" (*Hoze*, at p. 318.) As such, *Hoze* held that the Legislature intended to authorize the parole board to supersede *Thompson* terms pursuant to section 1170.1, subdivision (c), when it grants parole to elderly prisoners under section 3055. (*Hoze*, *supra*, at p. 319.)

The analysis in *Hoze* is inapplicable here and that opinion does not assist petitioner. The *Hoze* court did not analyze whether an inmate may be released on parole

under section 3055 if he or she incurred a sentence pursuant to the Three Strike law while in custody. Instead, *Hoze* analyzed whether, in general, the Elderly Parole Program "overrides" a *Thompson* term under section 1170.1, subdivision (c). (*Hoze*, *supra*, 61 Cal.App.5th at p. 314.) *Hoze* did not consider the meaning of the words "current sentence" appearing in subdivision (a) of section 3055. *Hoze* did not analyze the Three Strikes exclusion appearing in subdivision (g) of section 3055. In short, *Hoze* did not address the issues currently before us. Cases are not authority for propositions not considered or decided. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134.) Accordingly, we reject petitioner's assertion that his petition must be resolved under the holding of *Hoze*.

## VI. Petitioner's Remaining Claims are Without Merit.

We reject the three specific claims that petitioner raises.

First, because our independent analysis establishes that petitioner was not entitled to early parole release under the Elderly Parole Program, the superior court neither erred nor abused its discretion in denying the petition below. Thus, we will not disturb on appeal the lower court's ruling. (See *People v. Turner* (2020) 10 Cal.5th 786, 807 [regardless of the reasons given, a correct ruling will not be disturbed on appeal].)

Second, the lower court did not violate the separation of powers doctrine, which limits the authority of the three branches of government (the legislative, executive and judicial) to assume a core function of another branch. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 662; *Department of Fair Employment & Housing v. Superior Court* (2020) 54 Cal.App.5th 356, 400.) "Although the doctrine is not intended to prohibit one branch from taking action that might affect those of another branch, the doctrine is violated when the actions of one branch 'defeat or materially impair the inherent functions of another branch.' " (*Department of Fair Employment & Housing v. Superior Court*, *supra*, at p. 400, quoting *In re Rosenkrantz*, *supra*, at p. 662.) The separation of powers doctrine

may be violated when the judiciary intrudes into the executive branch's realm of parole matters. (See *Hornung v. Superior Court* (2000) 81 Cal.App.4th 1095, 1099 [court order allowing inmate to question commissioners regarding their parole-related decision process violated separation of powers].)

Here, however, the separation of powers doctrine is not violated because it is the judiciary that holds final responsibility for the interpretation of the law. (*Morris v. Williams* (1967) 67 Cal.2d 733, 748.) "It is the function of the judiciary, not an administrative agency, to construe statutory language. ' "Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts." [Citations.]' " (*Wolski v. Fremont Investment & Loan* (2005) 127 Cal.App.4th 347, 357, quoting *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 472.) Consequently, the separation of powers claim is without merit.

Finally, even if the superior court erred in appointing counsel to represent petitioner below—a claim we need not address on its merits—such a claim fails due to a lack of prejudice. Petitioner does not demonstrate a reasonable probability he would have obtained a more favorable outcome in the absence of the alleged error. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## VII. Our Concluding Remarks.

Unlike what occurred in *Hoze*, petitioner's "current sentence" included a term imposed pursuant to the Three Strikes law. Thus, based on the plain language in section 3055, petitioner was ineligible for early parole release under the Elderly Parole Program. (§ 3055, subds. (a) & (g).)

We do not intend for this opinion to stand for the proposition that the parole board is prohibited from considering early parole suitability under section 3055 for an inmate who commenced prison custody for a sentence not imposed pursuant to the Three Strikes law but who was subsequently sentenced pursuant to the Three Strikes law while in

custody.  In other words, this opinion does not call into question the parole board's consideration of petitioner's suitability for early parole and the early termination of his indeterminate term.  Instead, we hold that the Three Strikes exclusion under section 3055, subdivision (g), applies to prisoners, like petitioner, who were convicted and sentenced under the Three Strikes law even if they had already commenced serving a prison sentence.  An inmate, like petitioner, who is found eligible for early parole under section 3055 must nevertheless complete any *Thompson* term imposed pursuant to the Three Strikes law.  (§§ 1170.1, subd. (c), 3055, subd. (g).)

## **DISPOSITION**

The order to show cause is discharged, and the petition for writ of habeas corpus is denied.

LEVY, Acting P. J.

WE CONCUR:


DETJEN, J.


DE SANTOS, J.